IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIRK MACKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Case No. 4:23-CV-03986 |
| 2735 FONDREN LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, KIRK MACKEY, by and through the undersigned counsel, and files this, his Complaint against Defendant, 2735 FONDREN LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.     Plaintiff, KIRK MACKEY (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.     Plaintiff is disabled as defined by the ADA.

4.     Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

1

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, 2735 FONDREN LLC (hereinafter "2735 FONDREN LLC"), is a Texas limited  liability corporation that transacts business in the State of Texas and within this judicial district.

8.      Defendant, 2735 FONDREN LLC, may be properly served with process for service via its Registered Agent, to wit:  c/o Emad Nattil, Registered Agent, 5700 Braxton Drive, Suite 170, Houston, TX  77036.

## FACTUAL ALLEGATIONS

9.      On or about July 16, 2023, Plaintiff intended to be a customer at "Zaina Market & Bakery," a business located at 2735 Fondren Road, Houston, TX  77063, referenced herein as "Zaina Market".  Attached is a receipt documenting Plaintiff's purchase.  *See* Exhibit 1.  Also attached is a photograph documenting Plaintiff's visit to the Property. *See* Exhibit 2.

10. Defendant, 2735 FONDREN LLC, is the owner or co-owner of the real property and improvements that Zaina Market is situated upon and that is the subject of this action, referenced herein as the "Property."

11. Plaintiff lives only 14 miles from the Property.

12. Plaintiff's access to the business(es) located 2735 Fondren Road, Houston, TX 77063, Harris County Property Appraiser's property identification number 0410280030110 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, 2735 FONDREN LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13. Defendant, 2735 FONDREN LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, 2735 FONDREN LLC and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

14. Plaintiff has visited the Property once before as a customer and advocate for the disabled. Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and for Advocacy Purposes.

15.     Plaintiff intends to revisit the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

16.     Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

17.     Although Plaintiff did not personally encounter each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

18.     Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as

recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

19.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42

U.S.C. § 12101 *et seq.*

20.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental
        disabilities, and this number is increasing as the population as a whole is
        growing older;

(ii)    historically, society has tended to isolate and segregate individuals with
        disabilities, and, despite some improvements, such forms of discrimination
        against individuals with disabilities continue to be a serious and pervasive
        social problem;

(iii)   discrimination against individuals with disabilities persists in such critical
        areas as employment, housing public accommodations, education,
        transportation, communication, recreation, institutionalization, health
        services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of
        discrimination, including outright intentional exclusion, the discriminatory
        effects of architectural, transportation, and communication barriers,
        overprotective rules and policies, failure to make modifications to existing
        facilities and practices, exclusionary qualification standards and criteria,
        segregation, and relegation to lesser service, programs, activities, benefits,
        jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and
        prejudice denies people with disabilities the opportunity to compete on an
        equal basis and to pursue those opportunities for which our free society is
        justifiably famous, and costs the United States billions of dollars in
        unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

21.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of
        discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

\* \* \* \* \*

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

22.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

23.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

24.     The Property is a public accommodation and service establishment.

25.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

26.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

27.     The Property must be, but is not, in compliance with the ADA and ADAAG.

28.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his

6

access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

29.     Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30.     Defendant, 2735 FONDREN LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

31.     Defendant, 2735 FONDREN LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, 2735 FONDREN LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

32.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and

equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

      i.   In front of the Modern Contemporary sign, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

      ii.   In front of the Modern Contemporary sign, the access aisle to accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

      iii.   In front of the Modern Contemporary sign, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

      iv.   In front of the Modern Contemporary sign, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the

Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

v.    In front of the Modern Contemporary sign, there is a vertical rise at the base of the accessible ramp serving the accessible parking space that is in excess of a ¼ of an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

vi.   In front of the Modern Contemporary sign, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

vii.  Under the furniture sign, the southern-most accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

viii. Under the furniture sign, the southern-most accessible parking space and associated access aisle have a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter

their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

ix.    Under the furniture sign, the ground surfaces of the access aisle of the southern-most accessible parking space have vertical rises running the entire length of the access aisle. As a result, surfaces of the access aisle have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

x.    Under the furniture sign, the ground surfaces of the southern-most accessible parking space have vertical rises running the entire length of the access aisle. As a result, surfaces of the accessible parking space have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

xi.    Under the furniture sign, the access aisle to the southern-most accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xii.    Under the furniture sign, the accessible curb ramp is improperly protruding into the access aisle of the southern-most accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xiii.   Under the furniture sign, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

xiv.    Under the furniture sign, the Property has an accessible ramp leading from the southern-most accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

xv.     Just south of Zaina Supermarket and Bakery, due to the presence of a shopping cart corral, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards.

11

This barrier to access would make it difficult for Plaintiff to access the rest of the units of the Property as Plaintiff's wheelchair would not be able to get past this barrier.

xvi.     Due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route coupled with the presence of a shopping cart corral in the exterior accessible route,, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route causing the exterior access route to routinely have clear widths below the minimum thirty-six (36") inch requirement specified by Section 403.5.1 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

xvii.    Due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route coupled with the presence of a shopping cart corral in the exterior accessible route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route as a result, in violation of Section 502.7 of the 2010 ADAAG Standards, parking spaces are not properly designed so that parked cars and vans cannot obstruct the required clear width of adjacent accessible routes. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

xviii.   Due to the barrier to access referenced in (xv, xvi and xvii), the Property lacks a single accessible route connecting accessible facilities, accessible elements

12

and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property.

xix.     In front of Zaina Supermarket and Bakery, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xx.     In front of Zaina Supermarket and Bakery, the accessible curb ramp is improperly protruding into the access aisle of the two accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxi.     In front of Zaina Supermarket and Bakery, the two accessible parking spaces and associated access aisle have a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

xxii.     There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of

13

Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

xxiii.  Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

## ZAINA SUPERMARKET AND BAKERY RESTROOMS

xxiv.  The actionable mechanism of the paper towel dispenser in the restroom is located outside the maximum prescribed vertical reach range of 48 inches above the finished floor as set forth in Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the actionable mechanism of the paper towel dispenser as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

xxv.  The height of the bottom edge of the reflective surface of the mirror in the bathroom is above the 40-inch maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to properly utilize the mirror in the restroom since Plaintiff is sitting in a wheelchair and is lower than a person standing up.

xxvi.  The accessible toilet stall door is not self-closing and violates Section 604.8.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely and privately utilize the restroom facilities.

14

xxvii.    The height of coat hook located in accessible restroom stall is above 48 (forty-eight) inches from the finished floor in violation of Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the coat hook as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

33.    The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

34.    Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

35.    The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

36.    All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

37.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

38.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, 2735 FONDREN LLC, has the financial resources to make the necessary modifications.  According to the Property Appraiser, the collective Appraised value of the Property is $3,853,259.00.

15

39.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

40.     Upon information and good faith belief, the Property has been altered since 2010.

41.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

42.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, 2735 FONDREN LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

43.     Plaintiff's requested relief serves the public interest.

44.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, 2735 FONDREN LLC.

45.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, 2735 FONDREN LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

46.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, 2735 FONDREN LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, 2735 FONDREN LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, 2735 FONDREN LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, 2735 FONDREN LLC to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: October 19, 2023

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com